Good morning. I'm Susan Dorsey. I'm representing Lainey C. by and through her parents, Miley C. and Romeo C. And present with me this morning in the courtroom are Miley and Romeo C. May it please the Court, I'd like to reserve five minutes, please, for rebuttal. The posture of this case is somewhat unusual in that appellants were deemed the prevailing party following the administrative proceedings. However, plaintiffs did not prevail as to the August 2011 IEP, and that is the offer that is at issue in this proceeding. They did prevail, as I understand it, on the other IEP. That's correct. That was the one in January 2011. January, correct. Now, I'd like to step back and just point out that the context of the August offer is important in this case because this is the third time that Lainey has been found eligible for special education. She was twice previously found eligible. The department rescinded her eligibility. They tried to have her proceed without supports, and those efforts failed. So parents in September of 2010 asked for an IEP. They wanted to, again, continue trying supports before the January IEP was developed. Those were not working. Parents, again, asked in November. She didn't get an IEP until January of 2011. Once that was implemented, parents were troubled that it wasn't meeting her needs. Another IEP was held in June. That was not an issue at the administrative proceeding. Another IEP, parents eventually pulled her out in the summer of 2011, placed her at American Renaissance Academy, ARA, and the school asked to have one more chance at developing an IEP. Parents agreed to that. So now this is almost a year after the request for an IEP. It's now August of 2011. She's been denied a FAPE as to the January IEP. There was a finding at the hearing on that. The August IEP was... Denied or said that she was denied an IEP in January, but then said she was not denied the IEP in August. That's correct. So what deference do I owe the hearing judge's findings? The court owes minimal difference to the administrative law judge's findings because they were conclusory. The administrative judge did not address key issues, very important issues for Laney, her socialization... Well, don't I owe the same deference to those findings that the district court owed those findings? Well, I believe that the district court was overly deferential. The judge had serious concerns with the administrative decision and said so throughout the hearing on the merits. And she said it was a conclusory decision and there just was not enough there for her to even review. She asked for supplemental briefing. She was struggling very much. I mean, she was, at one point, wanted to send it back down to have the hearing officer say what he had relied on. Well, as I understood it, she asked for supplemental briefing on five issues because she could not find that the hearing officer had ever been presented those issues and wanted you to come up with, if you will, the places in the record where the hearing officer would have been presented those issues. And then after finding that, she went further to suggest that she couldn't find they'd been presented either. Well, at page 19 of the administrative decision, the hearing officer... Well, both at pages 12 and 19, the hearing officer lays out what the issues are. And at page 19, the heading is the appropriateness of the program and placement offered in the August 4, 2011 IEP. So clearly, the offer of fate pursuant to that IEP was exhausted before the hearing officer. Well, but as I understood it, what the district judge was really looking at is there are five issues. In fact, the district court identified those five issues at ER 16 to 19. There were five issues that the district court identified that were not administratively exhausted. Well... And said, gee, you know, if they're not administratively exhausted, I can't even get into them. And then went even further and requested supplemental briefing and questioned at the hearings to determine the issues that were properly before it. And then said, those issues weren't properly before us. The key issues... Well, I can tell you, as I've outlined them, maybe you can tell me if I'm wrong, I outlined them that they were whether the August IEP academic goals were not based on adequate PLEPs, whether the IEP in August failed to include goals addressing Laney's behavioral needs, autism, and expressive receptive language, whether the August IEP goals were measurable, whether the lack of clarity concerning who would implement the IEP goals rendered it a denial of FAPE, and whether the August IEP team was required to implement a social skills program. Those are the ones I outlined as the ones the district court was worried about because that was what they identified. And then I didn't find them presented either. Well, the hearing officer says that the appropriateness of the program and placement offered in the August 4th IEP is the issue. He says, petitioners... Where is it you're reading from? At page 20 of the administrative decision. Okay. Petitioners next assert that the August, this is the second, rather third to the last paragraph. Petitioners next assert that the August 4th, 2011 IEP lacked goals or contained inappropriate goals to address students' lack of socialization skills and sensory issues. Specifically, petitioners claim that the one goal addressing students' frustration and lack of personal space did not address students' unique educational needs. I think you also said that in your brief. But I guess my worry is that after citing this passage, it doesn't seem to me there's any argument, or at least I can't find any argument in your brief, concerning which of these unexhausted arguments the passage raises. Which ones of these five does this passage raise? The appropriateness of the goals, whether students, he failed to address students' lack of socialization skills and sensory issues, the academic goals were inappropriate, a student has grade-level academic abilities. Stated another way, that statement about academic abilities, there was nothing in the PLEP. And the special education teacher, Mr. Passey, acknowledged that, that there was nothing in the PLEP to support the addition of the academic goals. So it's sort of the reverse way of saying that the academic goals, based on the PLEP, the PLEP would say that she had grade-level ability. So if they're going to add academic goals, the PLEP needed to reflect what her academic needs were in order to build on those goals. I think the key issue in the case is this lack of a socialization program or any skills. The lack of a socialization program is something that the district court did consider, right? That's right. It's at the merits of the argument. And that's really the central issue in this case. That is the most important issue facing this child. That's what all of the experts, Dr. Arneman, Dr. Bowman, Dr. Fitzgerald, all agreed. That was her greatest area of deficit. So as I look at, okay, I look at violations of the IDA like this, and I'm sorry to monopolize my time. My two colleagues could break in and cause me to be quiet a little bit. But as I look at that, there's two ways the IDA could be violated. One is that it could be violated by failing to comply with procedures. That's correct. And two is that the IEP developed by the school district is not reasonably calculated to enable the child to receive educational benefits. That's correct. Now, when I look at those two, then it seems to me that what you're really going to is to the second of those arguments, which is as it relates to the socialization. Would you agree? That's correct, yes. Okay, so you're saying that it fails to address socialization needs? Well, the interesting thing about the case is the one goal that was presented in the January IEP was found to be a denial of faith. It lacked measurability. It was repeated verbatim in the August IEP, and another almost identical goal was added, another health goal. The words deficient and weak were substituted, but other than that, they were identical. Are we really arguing that the socialization accommodations had already been tried and failed? That's correct. Is that your argument? The one thing that they were providing that had anything to do with socialization was a group training program, and that had been tried and failed. Laney went one time after the January IEP. It was not effective. This is a child with significant socialization needs. To impose a child like this on regular peers and expect that they're going to train that child or teach that child how to socialize is unreasonable. It's not fair to Laney, and it's not fair to the other children. I appreciate your argument. I guess my biggest question is what precedent do I have that just because an accommodation was less successful in the past that it's necessarily inappropriate for inclusion in the future IEP? Especially when there are a lot of other accommodations in the second IEP around it that might help the one that was tried before work better this time. Well, the social skills group isn't in and of itself the problem. If she had a one-on-one that was teaching her how to socialize, if she had measurable objective criteria-based goals and objectives that were teaching her how to socialize, that she was building a repertoire of socialization and that she could then go into a social skills 30 minutes a week and kind of try out what she had learned, that wouldn't be a problem. But where that is the only thing that's being offered, there are other things. But with respect to socialization, that was really all that was being offered. Those two health goals do not provide objectively measurable basis for tracking Laney's progress. They include the language enhancing behaviors and reducing health risks. Those are extremely vague goals for a developmentally disabled child with significant socialization needs. Well, go ahead. So you're saying there are no measurable goals, but on the socialization issues, isn't the goal of refraining from inappropriate comments 80% of the time for five consecutive occasions a measurable goal? And isn't that related to socialization? Not according to- I'm sorry, are you- I'm on ER 63. Right. So with respect to that, both Mr. Passey at 501 and 502 of the transcript, the special education teacher said that the goal was immeasurable. He was the care coordinator and the special education teacher. He was responsible for the IEP. That's at transcript 494. He says, he makes the admission that it's immeasurable. The author of the goal was not a special education teacher. It was Shelly Dalton. She wrote it pursuant to the behavior support plan. And when she was cross-examined, she said, my whole focus was behavior, was not socialization. It was taken verbatim from the behavior support plan and plunked into an objective. And she said that it was immeasurable. It wasn't her intent for that to be a standalone goal. I could reference you to the record for that. Well, my worry, I guess, and I didn't want to interrupt my colleague, but my worry was the district court found that the challenges concerning measurability had not been raised, and therefore were not administratively exhausted. So what you're arguing here is a total different argument than you raised in front of the administrative law judge. Well, I said that they were inappropriate goals. They didn't address socialization. You don't expect to have... Well, but here I am in front of the judge. I've got a district court judge who I have to, I can only undo his, if you will, factual conclusions based on clear error. I can go forth on a legal basis to much more on other appropriately applying the law or on to dying or giving the fape. But when I have to go the factual considerations the judge found, I have to find them clearly erroneous. Frankly, it worries me that challenges concerning the measurability of the goals were not raised in front of the administrative law judge. Well, at page 20 of the administrative decision, it says that petitioners next assert that the August 4, 2011, lacked goals or contained inappropriate goals. I don't ever expect to hear from the special education teacher and care coordinator who's responsible for the IEP that they're immeasurable. You don't, you know, it's for me to guess that when I file for hearing, you know, you'd have to see into the future. But it was unexpected admission, and both... to having goals but not measurable goals. Well, if what they're saying is that in line with what Judge Friedland was suggesting was that those two health goals address socialization, or the second of the two address socialization, then I'm trying to address that, that it's immeasurable, that it's not an appropriate goal for measurability's sake. I didn't expect that the care coordinator or the author of that goal, although she didn't expect it to become a stand-alone goal or objective, would say that it was immeasurable. I mean, that's an important admission. And pursuant to the statute, the statutory command says that the IEP must contain a statement of measurable annual goals, including academic and functional goals. Your time has expired. Thank you very much. Thank you. Thank you. Good morning, Your Honors. The case before you today is an appeal from the District Court which affirmed the findings of fact and conclusions of law of March 27, 2012, issued by Richard A. Young, an experienced administrative hearings officer. And as was mentioned previously by plaintiffs, we are only concerned about the August 4, 2011, IEP. As the January 25, 2011, IEP was found to be a denial of free, appropriate public education, and defendants did not appeal that decision. Well, they wouldn't be the ones to appeal a denial, would they? I'm sorry? They wouldn't have appealed that. They won that, didn't they? No, I mean defendants. Oh, I'm sorry. No, that's okay. Okay, okay. All right, all right. I had the wrong label on the wrong person. Go ahead. So if we go step back and look at what the District Court had to work with, I think the District Court took great indulgence in trying to decipher what were the actual issues that were being raised on appeal because they were not consistent and compatible with the issues that were raised in the request for due process hearing. As is clearly stated by law, as well as case law, only issues raised in the request for due process can be properly considered and decided by the hearings officer. And if I can point out, as the hearings officer stated in his bulleted points in his decision, these were the following issues that he was presented with at the administrative level. One, that the DOE failed to conduct a required three-year re-evaluation of student when it developed the January 25th and August 2011 IEPs. Two, that the DOE failed to assess student in all areas of suspected disability. Three, that the mainstreaming placement offered to student is inappropriate due to student's inattention and lack of socialization skills. I appreciate what you want to read to me. I guess my biggest question in all of this is this. If the appellant raised issues in front of the administrative hearing officer and he just didn't put them in his list and he's commented thereafter on those, we still would suggest they are exhausted, would we not? Absolutely. And actually, I believe... I mean, that's why I'm not sure reading me that list is of any importance. I have tried to put in front of you, if you would, and in front of your colleague who argued the other side, the five things the district court did not believe was put in front of the administrative hearing officer. And it seems to me that then I have to go through the administrative hearing officer's decision and I have to look at what he said in his decision and see if those, in fact, were addressed, correct? That's correct. Because whether he puts them in a list or not is not that important. Wouldn't you agree? I agree. And as such, I can respond to the issues that were raised at the district court level. Okay. First of all, although... One that I want you to especially look at... Yes. ...is whether the August IEP's academic goals were not based on adequate PLAPs. Well, and if I may comment on that, in particular... The reason I raise that is that was the one, it seemed to me, counsel was mainly talking about in her argument. Now, with respect to the academic goals, plaintiffs initially argued in the appeal before the district court that the academic goals are not appropriate because they're not linked to any baseline information in the PLAPs. It was... However, with respect to the IEP meeting that took place, it was parents who were adamant that they wanted those academic goals to be considered and kept in to the IEP, despite the fact that the school looked at all the information and was going to remove that goal. Parents are an integral member of the IEP team. And as such, their requests... But I guess the question is, was this administratively exhausted? No, it was not. You don't... Well, did you listen to what counsel said about why she believes they were administratively exhausted? In fact, she points to the blue brief. It's on page 21 of the blue brief, and it's also at the administrative hearing officer's decision. It says that the August 4, 2011, IEP lacked goals and contained inappropriate goals to address the students' lack of socialization skills and sensory issues. Why is that not addressing academic goals were not based on adequate play-ups? Going back, with respect to the social goals aspect, I would argue to the contrary. A review of the August 2011 IEP clearly showed, as was also evident in the decision by the hearings officer, that there were multiple goals with short-term objectives. And I would name the following, including working independently, remaining attentive to be organized and following organizational checklists, and also to participate appropriately in large academic group settings. Additionally, other short-term goals were added, such as utilizing coping skills by asking for a break or asking for assistance. The actual August 2011 IEP contains six pages of goals and objectives. To address socialization communication needs, for example, one of the goals and objectives called for students to work independently, have necessary materials, follow an organizational checklist, as well as participate in group settings. Another goal called for students to use coping skills, appropriate personal space, to take on the perspective of others, to control emotions, work on body language, stay on topic, and refrain from inappropriate comments. So really what you're telling me, you're presenting argument as to why the IEP did address the socialization needs. Isn't that what you're trying to argue? At this time, yes. And I said it's evident in the decision by the hearings officer as well. It wasn't really my question. My question is, did the administrative hearing officer's decision address the issue the district court identified saying it was administratively not exhausted, whether the August IEP's academic goals were not based on adequate PLEPs? I say PLEPs only because that's what you all say. Well, I think at the district court level, Your Honor, Judge Mulway actually had made the offer of remanding the matter back down to the hearings officer to determine the actual issues that were presented that Judge Mulway found were the issues that were perhaps not exhausted. The response by plaintiffs was that they declined that offer. It seemed obvious to me that Judge Mulway went way out of her way to try to determine what the exhausted issues were and what the exhausted issues weren't, including saying I'll remand it back to find out, including saying I'll give you a supplemental briefing to find out. And after all of those, then she said these issues are not exhausted. All I'm trying to do is allow you to respond, if you will, to the appellant's argument that what the administrative hearing officer's decision says is that the August 4, 2011 IAP LAC goals and contained inappropriate goals is in fact exhausting the first of those that the district court says was not exhausted. In careful review of the decision, I would argue that the hearings officer's decision was careful and very thoughtful. It was very extensive in looking at all the goals, and unlike what counsel had pointed out that the hearings officer determined that there weren't appropriate social goals in the January 2011 IAP, I would like to quickly point out that is not in fact what the hearings officer found. The hearings officer found that in the January 2011 IAP, that one health goal in and of itself was not enough to... Isn't your response to Judge Smith, though, about the academic goals and whether they were based appropriately on PLEPs, that the hearing officer did not address that because it was not raised? That is correct. It was not raised, but I also wanted to point out the fact that with respect to the academic goals, if your honors wanted some clarification or information, that in fact at the time of the IAP with respect to the academic goals and as well as what was brought forth by way of oral testimony was that parents were the ones that were adamant about keeping those academic goals in place despite the fact that now they are countering that and saying it should have been removed. Was there any challenge to academic goals before the hearing officer? No. So at the district court level, the Department of Education was at a disadvantage because what the Department of Education was trying to do is grapple at what were the actual issues on appeal. Usually they would be the issues that were raised in the lower court or in this case the administrative hearings level. It appears as though new issues were sprung forth. And now again at this juncture, even newer issues are kind of catapulted. I think just basic due process requires that first of all, that all parties receive a clear, specific statements of the allegations that are being argued that if there is any disagreement with the hearings officer, that it be confined to what are the actual areas of clear error that this hearings officer committed. I did not see that in any of the documentation. And yet in the district court level, Judge Mulway nonetheless, I would say, was very generous in trying to perhaps resurrect or rehabilitate Plaintiff's case by perhaps speculating a bit that these issues, this is what I could glean, were the issues that perhaps are being raised on the appeal level. I would argue still though that those issues clearly were never raised at the administrative level, never before the hearings officer. So for those reasons, at this time, this court should not entertain any of those issues. But beyond that point is the fact that clearly based on the record before you, there's more than ample evidence to show that the hearings officer's decision were careful and thorough. He clearly interjected on objections quickly. He questioned all the witnesses. And he weighed and balanced the credibility as well as all the evidence presented as is evident in his decision because he looked at all the documentation, written as well as oral, in his decision, which span many pages. So to say that the hearings officer should be afforded minimal deference, I would wholly disagree at this time. All right. Thank you. Your time has expired. We appreciate your argument. Counselor, you used all your time the first time and went even into the red, but I'm in Hawaii and I'm in a good mood, so I'll give you 30 seconds. I appreciate it. I would like to address the exhaustion issue as to the academics that you raised, Judge Smith. At excerpt of Record 126, the hearing request, petitioner said that the information in the PLEP indicates that Laney has grade-level academic abilities, yet three of the five annual goals in the 8.411 IEP are academic. At page 21 of the hearing decision, the hearing officer says, The first thing you just read sounds like you're saying there don't need to be academic goals, not that the academic goals are wrong. Based on the PLEP, there didn't need to be. If they needed to have academic goals, then there should have been something in the PLEP to ground them. What were her academic abilities? But if you were arguing below that there shouldn't have been academic goals at all, then that's not a great position to be in, to now be saying that the goals that there are are bad. Well, it's not that they shouldn't have been at all, but the information in the PLEP was inadequate. That's what we were saying, that the PLEP lacked the information to support the academic goals. And, you know, the argument that the hearing officer at page 21 of the decision says that, you know, it's unfair for parents to now complain about the inappropriateness of academic goals when this is what they had previously asked for to be included in the IEP. It's almost like you'll get nothing and like it. You know, we'll throw in academic goals with nothing to ground them in the PLEP. If the PLEP said what her levels were, then those academic goals could be measurable. Again, those are immeasurable because they lack the foundation in the PLEP, a starting point. We don't know where she's starting from, where they're trying to get her to, or how will we know when she's arrived. So the academic goals are inappropriate. I don't see how that's not exhausting academic issues. I would disagree that that is the main issue. The academics for this child really are not the main issue. It's the socialization issue. Well, I understand, but it's my understanding that when I faced you with the five issues that the good district judge said were unexhausted that you concentrated on the first. Okay. As it related to the paragraph you stated for me, so I wanted her to respond. I see. But I wasn't on to the socialization, and she gave quite a bit of socialization argument as well. Okay. And you're way over the 30-second threshold. I understand. I appreciate you indulging me. No, we thank you very much for your argument. Thank you. Case 13-16093, Laney v. Department of Education, State of Hawaii, is submitted.
judges: Tashima, Smith, Friedland